J-S21045-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRYON UMBEL, | : | |
| | : | |
| Appellant | : | No. 1798 WDA 2016 |

Appeal from the Judgment of Sentence September 15, 2015
in the Court of Common Pleas of Fayette County
Criminal Division, at No(s): CP-26-CR-0000639-2015

BEFORE:   LAZARUS, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED MAY 26, 2017**

Bryon Umbel (Appellant) appeals from the judgment of sentence entered September 15, 2015, after he was found guilty of, *inter alia*, aggravated indecent assault and corruption of minors.  Upon review, we affirm.

The trial court set forth the relevant factual background of this case as follows.

> At trial, the victim [Z.W.], who was fourteen years of age when she testified, told the jurors that [Appellant] is her uncle, married to her deceased mother's sister.  One summer day in 2009, when she was eight years old, while she was visiting [Appellant's residence, Z.W.] was on the couch wearing a robe and her underwear when she was joined by [Appellant] who put his hand on her thigh.  She initially pushed his hand away, but he persisted so she just left it there.  Eventually [Appellant] put his hand between her legs, underneath her underpants, and placed his fingers in her vagina.  [Z.W.] testified that she stayed on the couch because she was scared, and [Appellant] told her not to tell anyone or [he would] get in trouble.

_____
*Retired Senior Judge assigned to the Superior Court.

The second crime occurred several years later, again at [Appellant's] house, when [Z.W.] was twelve years old. [Appellant] joined her on the couch, squeezing her thigh so hard that it hurt. He again placed his hand inside her clothing, and put his fingers into her vagina. Although [Z.W.] did not tell anyone, she wrote about the incident by writing a story in her journal. The third incident took place in January 2015 on [Appellant's] son's birthday. [Z.W.] attended the birthday party, and then spent the night sleeping on the couch. She awoke to find [Appellant] sitting beside her, and her hand inside his boxer shorts, touching his penis. [Z.W.] immediately pulled her hand back, whereupon [Appellant] left her alone.

[Z.W.] testified that in an attempt to deal with her feelings, she started to write a story in her journal. The narrative was in story format, and the name used for the abusive character was "Shawn," but according to [Z.W.], some of the events described are based on true things, but it is mostly a fictional work. The journal was found by [Z.W.'s] stepmother in February 2015. When her stepmother brought it to [Z.W.'s] attention, [Z.W.] then told her stepmother what had happened to her at the hands of [Appellant. Appellant] was interviewed three times during the police investigation, and on two of those occasions, he was given [**Miranda**[1]] warnings. During the first two interviews, he denied that anything at all had happened between himself and [Z.W.]. However, during the third and last round of questioning, [Appellant] stated to [] police officers that he had accidentally touched [Z.W.] "not more than five times," but the touching was only on the outside of her clothing. At trial [Appellant] told the jury that [Z.W.] tried to tickle him and then grabbed his groin, but he grabbed her hand to push it away. He then testified that, in pushing her hand away from himself, he may have inadvertently touched between [Z.W.'s] legs once.

Trial Court Opinion, 12/7/2015, at 1-3 (citations omitted).

Following a jury trial, Appellant was found guilty of, *inter alia*, the aforementioned crimes. On September 15, 2015, Appellant was sentenced

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

to 60 to 120 months' incarceration. No post-sentence motions were filed, and on October 13, 2015, Appellant timely filed a notice of appeal. Both the trial court and counsel for Appellant complied with the mandates of Pa.R.A.P. 1925. However, for reasons not apparent from the record, Appellant's counsel failed to file an appellate brief with this Court, and by order dated April 11, 2016, Appellant's appeal was dismissed.

Soon thereafter, counsel filed a motion to withdraw, which was granted. The trial court appointed new counsel who then filed a petition seeking to reinstate Appellant's direct appeal rights, which the trial court granted on November 16, 2016. Appellant complied with the trial court's request to file a concise statement and in response, the court submitted a statement stating it believes its December 7, 2015 opinion following Appellant's first filed concise statement sufficiently addressed all the issues raised by Appellant and thus, the court would rely on that opinion for the purposes of this appeal. *See* Statement in Lieu of Opinion, 12/21/2016.

Appellant presents the following inartfully-phrased issues for our review.

1. The Commonwealth failed to prove beyond a reasonable doubt that [] Appellant committed the crimes in which he was charged beyond a reasonable doubt.

2. The [trial court] erred during trial in not permitting questioning from the entirety of the [Z.W.'s] written story, [which was] exculpatory evidence to [] Appellant, even though it was provided by the Commonwealth in discovery

and introduced as evidence during direct examination by the Commonwealth.

3. The [trial court] erred in not permitting [Z.W.'s] written story, [which was] exculpatory evidence, to be examined by the jury during the jury's deliberation.

Appellant's Brief 2 (unnecessary capitalization omitted).

In his brief, it appears Appellant is challenging both the weight and sufficiency of the evidence to sustain his convictions.[2] To the extent Appellant attempts to argue a weight claim, we find it waived for failure to preserve properly this issue. *See* Pa.R.Crim.P. 607(a) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion."). *See also Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa. Super. 2003) (providing that a weight of the evidence "claim must be presented to the trial court while it exercises jurisdiction over a matter since [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.") (citations and quotation marks omitted).

---

[2] *See* Appellant's Brief at 10 (averring the Commonwealth failed to prove Appellant committed the crimes to which was charged beyond a reasonable doubt, but stating the standard of review when assessing a weight-of-the-evidence claim).

- 4 -

Likewise, in reviewing Appellant's argument as a properly preserved sufficiency claim, we find it waived for failure to develop this claim on appeal. Specifically, Appellant's concise statement, his statement of questions presented on appeal, and argument section of his brief fail to state which elements of which crimes the Commonwealth failed to prove beyond a reasonable doubt. Appellant also fails to cite any legal authority to support his claim. Appellant's Brief at 10-11. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (holding that failure to set forth the elements of the crimes of which an appellant was convicted, argue which specific elements were not met, or make citation to legal authority in support of his claim, results in waiver of sufficiency-of-the-evidence claims).

Furthermore, the body of Appellant's brief contains no more than a summary of the evidence that was presented at trial, highlighting the inconsistencies among testifying witnesses. He fails to provide any argument to support his contention that the Commonwealth failed to meet its burden, and we cannot and will not make supporting arguments on his behalf. No relief is due.

Appellant's final two issues challenge the trial court's evidentiary rulings concerning Z.W.'s journal. By way of further background, the Commonwealth introduced, through Z.W., a journal that she kept. Z.W. testified that she had written a fictional story in this journal and one of the characters, "Shawn," was based on Appellant. N.T., 9/9/2015, at 22-23.

Although the story contained details of sexual assaults, Z.W. explained that her story was more an expression of how she felt than what had actually happened, confirming that the assaults perpetrated by Appellant were different than what she detailed in her story. *Id.* at 24. For example, the Commonwealth had Z.W. read a passage where the protagonist's feet were tied, she was struggling and screaming, and the "babysitter," who Z.W. identified was Appellant, entered the room with duct tape. *Id.* at 26. Immediately after reading this passage, and upon further inquiry from the Commonwealth, Z.W. confirmed that she was never restrained, nor had Appellant tied her feet or used duct tape. *Id.* Z.W. explained that this passage relayed how she felt after Appellant assaulted her, specifically that she felt "trapped" and "hurt." *Id.*

On direct examination, the Commonwealth did not seek to mark the journal as an exhibit or enter it into evidence.[3] On cross-examination, defense counsel requested Z.W. read the entire story and allow the jury to examine the journal. The Commonwealth objected to this request but the journal was marked as a joint exhibit. After argument, the trial court stated the following:

---

[3] On appeal, the Commonwealth contends that the introduction of the journal "was to show that Z.W. in some way, documented the assaults [Appellant] committed against her, specifically the effect that the assaults had on Z.W. and how those experiences made her feel." Commonwealth's Brief at 4.

[Defense counsel] may put together questions that you wish to ask [Z.W.] if what she had written is inconsistent with her testimony here, but I'm not going to have her read this in its entirety, one, because she's testified that it's fictional, even though she's included a fictional person name[d] Shawn who she said was based on [Appellant]. If there[ is] a prior inconsistent statement here, then you may ask her [about] that prior inconsistent statement. She's not reading it in its entirety. It[ is] not going to the jury in any way, shape or form, redacted, unredacted, partially or whatever.

N.T., 9/9/2015, at 53. Appellant argues the trial court erred in (1) disallowing Z.W.'s journal to be admitted in its entirely, and (2) prohibiting the jury from examining Z.W.'s journal. We address these issues sequentially.

With respect to the former, Appellant argues that "the trial court erred in failing to permit [] Appellant's request for a read of, and question of the short story as a whole, while allowing the Commonwealth to introduce isolated portions of the story that clearly support the prosecution's positon alone." Appellant's Brief at 12. Appellant avers the "fictional story and testimony are so vastly different in their content, location, description, and nature of the events and the individuals present, that any comparison of the story to the incidents charged were improper and unfairly prejudicial to [] Appellant." *Id.* at 17.

It is well-settled that with all evidentiary rulings, a trial court's decision to disallow such evidence will not be reversed absent an abuse of discretion. ***Commonwealth v. Fisher***, 764 A.2d 82, 86 (Pa. Super. 2000).

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013)

(quotation marks and citations omitted).

In its 1925(b) opinion, the trial court offered the following analysis:

This issue is based on a false premise; the [trial court] certainly permitted questioning from the entirety of [Z.W.'s] story, expressly telling defense counsel that he could ask the victim questions concerning any inconsistencies between her written document and her trial testimony. The [trial court] merely precluded the victim from reading her story in its entirety.

* * *

Aside from [the one passage Z.W. read, as cited *supra*], no other references to the fictionalized story were made until defense counsel began to question the victim about it. Defense counsel then asked to have the document marked as an evidentiary exhibit, and also requested that the victim read it to the jury. At a bench conference on the issue, the [trial court] asked [defense] counsel if the content was admissible, or whether it was violative of the Rape Shield Law. Defense counsel did not answer the [trial court's] questions, but the assistant district attorney stated that she would want it redacted to exclude any references to intimate behavior between the victim and other people. As the [trial court] then explained to [defense] counsel, if the events described in the [Z.W.'s] story actually happened to her, the Rape Shield Law would apply to preclude the introduction of the testimony. On the other hand, if [Z.W.'s] story was fictional and did not relate to [Appellant's] conduct, that was the subject of the trial, then the story line is irrelevant.

- 8 -

> After much discussion between the [trial court, defense counsel, and] the assistant district attorney, defense counsel stated several times that he wanted the story, albeit fictionalized, admitted in its entirety to demonstrate the victim's "fanciful imagination," and give him "latitude for a defense." The [trial court] expressly told counsel that the written story was not going to be admitted into evidence, and it was not going to be sent out with the jury, redacted or not. The [trial court], however, told counsel that he could question [Z.W.] about it, to bring to light any inconsistencies between her testimony and her written story, which course of action counsel then followed.

Trial Court Opinion, 12/7/2015, at 5 (citations omitted).

Upon review, we find the trial court did not abuse its discretion. First, we agree with the trial court that the contents of the story that did not refer to the character that was based upon Appellant, if proven true, would be the type of content that is expressly protected under the Rape Shield Law. **See Commonwealth v. K.S.F.,** 102 A.3d 480, 484 (Pa. Super. 2014) (explaining the Rape Shield Law was enacted to "prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim ... [and] to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants.") (citations omitted). Second, assuming the story is fictitious, the story, in its entirety, was not relevant to the conduct alleged to have occurred. Third, our review of the record confirms the Commonwealth's position that the passage detailing an assault, which was read on direct examination and readily confirmed as not being of the same conduct Appellant was alleged to have perpetrated, was relevant to show that Z.W. had documented her feelings about the abuse.

Fourth, we find the trial court's ruling, which permitted Appellant to question Z.W. at length about the contents of the story and any inconsistencies, was adequate to allow Appellant to lay a groundwork for his defense that Z.W. had a "fanciful imagination," and that the assaults documented in the journal were "vastly" different from those alleged to have been perpetrated by Appellant. N.T., 9/8/2015, at 50; Appellant's Brief at 17. Lastly, while Appellant asserts that the testimony elicited during direct examination regarding the fictional story was "improper and unfairly prejudicial" to him, we note that Appellant raised no objection to the introduction of this testimony by the Commonwealth. Furthermore, it was Appellant, and not the Commonwealth, who proceeded to introduce various passages of the story, which detailed incidents that were "vastly different in their content, location, description, and nature of the events and individuals present[.]" Appellant's Brief at 17. For these reasons, Appellant's issue warrants him no relief.

In his final issue, Appellant argues that by "failing to allow the jury to review the entire story, the Commonwealth's presentation was extremely prejudicial and did not result in harmless error." Appellant's Brief at 18. Appellant further contends:

> By prohibiting the jury from hearing and viewing the entire story as a whole, rather than isolated incidents convenient to the Commonwealth's case-in-chief, the [trial court] deprived [] Appellant of a fair trial. The jury most certainly used the fictitious and sexually explicit story in their deliberations, but

- 10 -

were forbidden from putting the story's fragments into any sort of context. The guilty verdict retuned by the jury was improperly influenced by the [trial court's] decision to exclude relevant portions of the story that were exculpatory.

*Id.* at 19.

Appellant's argument amounts to no more than a bald assertion that, because the Commonwealth introduced one passage, which it readily noted contained a description of an assault that was different than the assault perpetrated by Appellant, the jury was entitled to review the entire story. The record makes it clear that the assaults detailed in the story are not the same allegations from which Appellant's charges stemmed. Appellant provides no more than conclusory arguments, which he claims should result in this Court vacating the jury's verdict.

Pa.R.Crim.P. 646(a) provides that a "jury may take with it such exhibits as the trial judge deems proper[.]" Because we find the trial court did not abuse its discretion in ruling against Appellant's request that Z.W. read the entire story on cross-examination and enter it into evidence, we likewise find the trial court was within its discretion to deny Appellant's request to allow the journal to be sent out with the jury during deliberations.

Accordingly, after a review of the briefs, record, and applicable case law, we are not persuaded that Appellant's issues warrant relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>5/26/2017</u>